UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - -- - - - - - - - - - - - - - - - - - - X

BRIAN MURPHY,

                    Plaintiff,

        - against -

THE BOARD OF EDUCATION
OF THE OCEANSIDE UNION
FREE SCHOOL DISTRICT,
THE OCEANSIDE UNION FREE
SCHOOL DISTRICT, and
HERB BROWN, Ph.D.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM
AND
ORDER

03-CV-4113 (TCP) (MLO)

PLATT, District Judge.

       Defendants Board of Education of Oceanside Union Free School District; the Oceanside

Union Free School District; and Herb Brown, Ph.D ("Brown"), Superintendent of Schools,

(collectively "District" or "Defendants") move pursuant to Federal Rule of Civil Procedure

12(b)(1) and 12(b)(6) to dismiss plaintiff's claims on three (3) grounds: (i) failure to state a

cognizable federal claim, (ii) failure to exhaust State remedies, and (iii) the qualified immunity

doctrine bars plaintiff's claims for damages.

       For the following reasons, the Defendants' motion is **GRANTED** with respect to the
Plaintiff's due process claim.

## BACKGROUND

       Plaintiff Brian Murphy ("Murphy") was hired by the District following active

recruitment of him from his previous employer in Texas. Murphy moved to Long Island in June

of 2000 to begin his teaching position in the fall of 2000.  Per District protocol, Murphy–like all

other new teachers in the District–was placed on probation for his first three (3) years.

According to District practice, if after three years of teaching in the District and upon completion

of a specified tenure approval process, Murphy would have either been granted tenure or been

terminated.

Upon joining the school's staff, Murphy joined the Oceanside Federation of Teachers, a

union, which placed him under their protection, and that of the Collective Bargaining Agreement

("CBA").  (Compl. at ¶41)  The District and Murphy both agreed to the CBA's terms.

According to the plaintiff's complaint, Murphy was an excellent teacher who inspired his

students to learn.  He founded the Builder's Club for the Middle School and brought a chapter of

the Kiwanis Club to the school.[1]  (Compl. at ¶ 15)  Murphy's students excelled over other

students and were often cited in Newsweek as students of the week.  (Compl. at ¶ 16)  Murphy

played a role in the restructuring of the school's history teaching plan, and was apparently highly

regarded.  (Compl. at  ¶16)  Because of these allegedly consistent accolades, and because he

received  no negative reports, Murphy claims his future tenure position was a foregone

conclusion.

However, on April 9, 2003, Brown, the District's Superintendent, sent Murphy a letter

informing him that Brown would be recommending a denial of tenure for him.  In the letter,

Brown outlined twelve (12) reasons for its decision–reasons which the Plaintiff alleges are

"impermissibly vague" and "false" :

---

[1] The Kiwanis Club is a national organization whose goals are, *inter alia*, "to encourage
the daily living of the Golden Rule in all human relationships."
www.kiwanis.org/about/objects.asp (last visited August 25, 2005).

1.      inadequate curriculum planning;

2.      inability to successfully bring about the learning goals of lessons;

3.      teaching techniques directionless in terms of goals that students can understand;

4.      inability to develop lessons with structure and purpose;

5.      inability to execute lessons that contain elements of effective instruction and to deliver lessons that foster a deeper understanding of social studies content;

6.      inability to differentiate instructional strategies in order to serve the diverse needs of students;

7.      failure to provide students with the time necessary to complete the task set before them, even though given previous direction to do so;

8.      ineffective written and verbal questioning techniques, which confine instruction to lower level comprehensive/recall questions and do not place emphasis on critical thinking;

9.      inability to consistently select and incorporate appropriate pedagogical strategies in lesson plans;

10.     inability or unwillingness to change patterns of instructional delivery to coincide with suggestions made by supervisors;

11.     failure to assign meaningful and appropriate homework; and

12.     inability to give clear direction to students.

Murphy responded in writing to the Superintendent's letter and served this response on the District through its attorneys. At a Board meeting on May 5, 2003, the Board voted to accept the Superintendent's recommendation for no tenure. On or about May 9, 2003, Murphy received formal written notification that tenure had been denied. The Board requested that Murphy resign his position and told him that if he did not, he would be terminated. He refused and was eventually terminated. (Compl. at ¶ 23)

New York State Education law requires that the Superintendent of schools notify a

teacher in writing at least sixty (60) days prior to the expiration of the probationary period that an affirmative recommendation for appointment on tenure will not be made. N.Y. Educ. Law §§ 2509(1)(a), 2573(1)(a), 3012(2). Notice must also be given that the Board of Education will review the failure to recommend for appointment on tenure at a board meeting to be held at least thirty (30) days after notice is given. N.Y. Educ. Law § 3031. The teacher may file a written response with the district clerk seven (7) days before the Board meets to consider the recommendation for dismissal. Id. New York State law does not require that Murphy be afforded a hearing or given an opportunity to speak or present evidence at the Board meeting.

The CBA, to which both Murphy and the District were parties, sets forth additional terms for the granting and denial of tenure to teachers. The CBA requires that four (4) evaluations be conducted of District teachers each year, and it also requires that the teacher be notified whenever materials are placed in his file. (Compl. at ¶¶ 45, 90 - 95) Under the CBA, the teacher has the opportunity to deny material in the memo, and any such material will be removed from the teacher's file if the teacher's claim that it is inaccurate or unfair is sustained. (Compl. at ¶¶ 45, 92-103) The complaint alleges that the processes outlined in the CBA were not followed.

Murphy brings suit claiming that the District failed to follow proper procedure in denying him tenure, thus violating his constitutional due process rights. (Compl. at ¶¶ 21, 232-235; 239-243) He also claims that other, similarly-situated teachers were afforded certain procedural protections in the tenure review process that he was not granted and therefore alleges an equal protection violation. (Compl. at ¶¶ 237-239) In addition, Murphy claims that his dismissal was as a result of the District's dislike of his association with the Kiwanis Club, which he claims constitutes a violation of his First Amendment right to freedom of association and speech.

Finally, at oral argument, Murphy made out a claim that sounded in fraud in the inducement–in other words, that Murphy moved his family to the District because of the misrepresentations by the District that he would be granted tenure if he did so.  However, this claim is not adequately fleshed out in the complaint (Compl. at ¶ 52), nor is it the substance of the present motion to dismiss.

Murphy claims that he has suffered because of his dismissal and that his future earning prospects have been harmed because of the controversy.  He has sought medical attention for the depression related to his dismissal.  (Compl. at ¶ 221)  Accordingly, he seeks compensatory and punitive damages from the District.

## DISCUSSION

Defendants seek to dismiss the plaintiff's case against them for failure to state a claim and for lacking subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  When considering a motion to dismiss a case for failure to state a claim, the Court must assume as true all allegations contained in the Complaint.  Fed. R. Civ. P. 12(b)(6).  "The defendant bears the burden of proof to show that even if the complaint's allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor, the plaintiff is still not entitled to relief."  Lerner v. Fleet Bank, 318 F.3d 113, 117 (2nd Cir. 2003); Thorson v. County of Nassau, 294 F.Supp. 2d 371, 373 (E.D.N.Y, 2003) (J. Platt).

Here, the Defendants move for dismissal on three (3) grounds: (i) failure to state any cognizable federal claim (specifically a procedural due process claim)[2], (ii) failure to exhaust

---

[2] Defendants initially brought their motion to dismiss for lack of a federal claim only on Murphy's constitutional claim of lack of due process.  Curiously, Murphy opposed the motion to dismiss by not only addressing the Defendants' due process argument but also by offensively

State remedies, and that (iii) the qualified immunity doctrine bars Plaintiff's claims for damages.

I.      **Procedural Due Process**

The Fourteenth Amendment assures that no State shall deprive a person of property

without due process of law.  U.S. Const. amend. XIV.  To recover under 42 U.S.C. § 1983 for a

procedural due process violation, Murphy must show that (i) he had a liberty or property interest

protected by the Constitution or a federal statute, and (ii) the Defendants, acting under color of

State law, deprived him of that property interest without due process of law.  Naramanchi v.

Board of Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

A.      **Property Interest**

Murphy's § 1983 claim for relief from due process violations depends upon a protected

right being unlawfully trampled.  Murphy asserts that he had a property interest in the tenured

position he believed he had secured.  However, Murphy's property claim is tenuous at best.  It is

the holding of this Circuit that probationary employees do not possess a property interest in their

jobs.  See, e.g., Thorsen, 294 F. Supp.2d at 373.

Protected property is not limited to real property, chattels or money, but rather extends to

"those claims which people rely on in their daily lives." Board of Regents of State Colleges et al.

v. Roth, 408 U.S. 564, 567, 577 (1972).  To have a property interest in a benefit, Murphy must

have more than an "abstract need or desire" for it and more than a "unilateral expectation." Id. at

577.  Rather, Murphy must have had a "legitimate claim of entitlement" to the tenured position

in order to have a constitutionally protected property right.  Id.  A person's interest or benefit

_____

defending his First Amendment claim in the complaint.  Since this is not a ground upon which
the Defendants brought their motion to dismiss, however, the First Amendment claim will not be
discussed within the space of this decision.

constitutes a "legitimate claim of entitlement" if it is supported by contractual or statutory language that might be invoked at a hearing.  Danese v. Knox, 827 F. Supp. 185, 190 (S.D.N.Y. 1993).

Murphy argues that he was hired under a clear implicit promise of a permanent position and thus has a right to a hearing before termination. Connell v. Higgenbotham, 403 U.S. 207, 208 (1971).  He argues that he had been immediately placed in charge of a department, had received nothing but positive reviews (except for the final one in which he was terminated), and had been hired away from his previous post in Texas so as to take on the current teaching position in the District.

However, such a so-called "implicit promise," without proof of such, is inadequate to establish a property right in the tenured position.[3]  In Roth, the seminal Supreme Court case on point, an assistant professor, who had a one-year teaching contract at the Wisconsin State University, sued for deprivation of due process rights when he was informed that he would not be rehired for the following year.  Roth, 408 U.S. at 566.  The court held that:

> the terms of the respondent's appointment secured absolutely no
> interest in re-employment for the next year.  They supported
> absolutely no claim of entitlement to re-employment.  Nor,
> significantly, was there any [S]tate statute or University rule
> or policy that secured his interest in re-employment or that
> created any legitimate claim to it.

Id. at 578.  Accordingly, the Court concluded that the professor had no property interest in his

_____

[3] Courts in this Circuit have recognized that collective bargaining agreements may provide the basis for a property right in continuing employment.  Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (holding collective bargaining agreement providing employee could not be fired without just cause creates property interest under due process clause).  Here, however, Murphy has not pointed to any such language in his CBA with the District and instead relies on what he calls an "implicit promise."

job, and thus suffered no deprivation of due process. Id..

Here, like the plaintiff in Roth, Murphy was a probationary employee who expected to be offered tenure, but was never guaranteed such. A probational employee has no property interest in a position that had not yet commenced because "if no property rights attach to probationary jobs, then, by extension, no property interests attach to jobs that have to yet even commenced. Thorsen, 294 F.Supp. 2d at 375 (emphasis in original); Donato v. Plainview -Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 629 (2d Cir. 1996) (holding that there is no property interest in a probationary position as an assistant principal). Therefore, Murphy does not have a vested property interest in his current probationary job, nor did he have one in his (falsely) anticipated tenured position.

Accordingly, the motion to dismiss should be granted because Murphy had no property interest in the tenured teaching position for federal due process purposes.

B.     **Procedural violation**

Assuming, arguendo, that Murphy did possess a property interest in the tenured position he did not receive, the next issue is whether that property interest was taken from him without due process. Naramanchi, 850 F.2d at 72. Murphy alleges in the complaint that the District did not adhere to the United States constitution, New York State laws, and the collective bargaining agreement when denying him tenure, thereby violating his due process rights as protected by the Fourteenth Amendment and 42 U.S.C. §1983.

However, the District appropriately followed New York State law procedures. In his complaint, Murphy acknowledges receiving a letter dated April 9, 2003 from the Superintendent providing him with the reasons for his recommendation against tenure. (Compl. at ¶ 27) Further,

Murphy acknowledges that he was given the opportunity to prepare a response to the Superintendent's letter, which he did. (Compl. at ¶ 31) Since, the District complied with State law requirements, there does not exist a federal constitutional due process claim in front of this Court.

Murphy argues, however, that the District's failure to comply with the procedures outlined in the CBA constitutes a procedural due process violation. The CBA requires four evaluations to be made of District teachers each year, and it also requires that the teacher be notified whenever materials are placed in his file. (Compl. at ¶¶ 45, 90 - 95) The Complaint alleges that the Defendants placed items in Murphy's file without proper notification. More critically, the CBA sets out numerous standards for the evaluation of both tenured and non-tenured teachers, none of which the District followed. (Compl. at ¶¶ 53 - 101)

As a 12(b)(6) motion, these facts must be taken as true. However, even if true, they nevertheless do not make out a claim of constitutional dimensions. Instead, it appears that Murphy may have a garden variety breach of contract claim against the District.[4] Be that as it may, this claim as it is currently pled does not belong in federal court. Consequently, the motion to dismiss should be granted.

II. **Article 78 Proceedings**

This Court need not discuss Murphy's failure to avail himself of an Article 78 proceeding in State court because it has already determined that Murphy could not establish a protected

_____

[4] This is not to say that Plaintiff may not have a federal cause of action via other means. For example, assuming no statute of limitations problem, the Labor Management Relations Act may confer federal jurisdiction over Murphy's breach of contract claim. 19 U.S.C. § 185. However, as the complaint currently stands, there is no federal jurisdiction over the alleged breach of the terms of the CBA.

property interest and could not establish that the District failed to comply with State procedural requirements.

III.    **Qualified Immunity**

Defendants argue that even if they did knowingly violate Murphy's constitutional or statutory rights, they are nevertheless shielded by the doctrine of qualified immunity.  The Eleventh Amendment grants sovereign immunity to State actors, which limits their liability when being sued in their official capacity.  U.S. Const. Amend. XI.  In a §1983 action, such as this one, qualified immunity will protect a defendant from personal liability for damages so long as his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In the instant case, the qualified immunity issue is merely academic; since Murphy had no protected constitutional or statutory right in a tenured position (see discussion in § IA, supra), then the Court does not need to entertain whether qualified immunity exists.

**CONCLUSION**

The Plaintiff's complaint still contains federal claims for First Amendment and Equal Protection violations as well as various State law claims over which the Court may exercise pendent jurisdiction.  For the reasons set forth above, the Defendants' motion to dismiss is **GRANTED** with respect to the due process claim.

SO ORDERED.

_____/s/_____
Thomas C. Platt, U.S.D.J.

Dated:  Central Islip, New York
        September 20, 2005